# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **SHELIA DIANNE FULLER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 4:13-CV-444-VEH |
| | ) |
| **WAL-MART STORES, INC., et al,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This is an age discrimination action filed by the plaintiff, Shelia Dianne Fuller, against the defendants, Wal-Mart Stores, Inc., Wal-Mart Stores East, Inc., and Wal-Mart Stores East, L.P. (collectively "Wal-Mart"). (Doc. 1.) The complaint alleges disparate treatment and disparate impact age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"). Both claims arise out of the plaintiff's employment with Wal-Mart.

The case comes before the court on the Wal-Mart's partial motion to dismiss, pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. (Doc. 10.) Specifically, Wal-Mart alleges that the disparate impact claim is barred because, as to that claim, the plaintiff failed

to exhaust her administrative remedies prior to filing suit.  For the reasons stated herein, the motion will be **GRANTED**.

## I.     APPLICABLE STANDARDS

### A.     Rule 12(b)(6) Motion to Dismiss

"[A] court should only grant a motion to dismiss [under Rule 12(b)(6)] where the defendant demonstrates that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).  "Moreover, when ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts [and reasonable inferences drawn from those facts] as true." *Id*. (emphasis added).  A court looks to the facts alleged in the plaintiff's complaint, and not its merely conclusory statements, when ruling on a motion to dismiss.  Thus, to survive a motion to dismiss for failure to state a claim, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 1965. Mere conclusory statements in support of a threadbare recital of the elements of a

cause of action will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

### B.   Administrative Exhaustion Requirements

"The law is well-settled that an employee must timely pursue and exhaust her administrative remedies as a precondition to filing an employment discrimination suit under . . . the ADEA. *Harris v. Bd. of Trustees Univ. of Alabama*, 846 F. Supp. 2d 1223, 1236 (N.D. Ala. 2012) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (Title VII); *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir.2005) (ADEA); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314,1317 (11th Cir.2001)). "[A] plaintiff is precluded from raising allegations in a civil action unless they are reasonably related to the underlying charges raised before the EEOC." *Price v. M & H Valve Co.*, 177 F. App'x 1, 14 (11th Cir. 2006) (*citing Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277, 1280 (11th Cir.2004)). Judicial claims are allowed if they "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint, but new acts of discrimination are inappropriate. *Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1279-80 (11th Cir. 2004) (internal quotes and citations omitted). Further,

> [a]n ADEA "action may be based 'not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by

3

the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.' "

*Bonham v. Regions Mortgage, Inc.*, 129 F. Supp. 2d 1315, 1320-21 (M.D. Ala. 2001) (citing *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1224 (11th Cir.2000) (*quoting* Fine v. GAF Chemical Corp., 995 F.2d 576, 578 (5th Cir.1993) (*quoting Fellows v. Universal Restaurants Inc.*, 701 F.2d 447, 451 (5th Cir.), cert. denied, 464 U.S. 828, 104 S.Ct. 102, 78 L.Ed.2d 106 (1983)).

## II.  FACTUAL ALLEGATIONS

### A.  The Complaint

The complaint alleges that, beginning in October of 2010, the plaintiff was employed by Wal-Mart as an Assistant Manager at its Attalla, Alabama location. While she was employed there, the plaintiff was the oldest Assistant Manager working in that store. Only one other Assistant Manager over the age of forty worked at Wal-Mart Attalla during the plaintiff's employment.

In December of 2011, a new Store Manager, Mike Crabtree, was hired to manage at the plaintiff's store. In February of 2012, while working a third shift rotation, part of the plaintiff's job duties required a safety check of the power lifting equipment and/or food temperature safety logs. Each night, the plaintiff made a check of safety equipment and signed her name as she had been trained to do by the

previous third shift Assistant Manager. In February of 2012, the plaintiff was called into Crabtree's office where she was falsely accused by Crabtree of not signing the safety log until the end of her third shift rotation. Crabtree told the plaintiff that she could, at her option, resign from her job or be terminated. The plaintiff resigned. A younger person was hired to replace the plaintiff.

The complaint alleges that younger Assistant Managers signed the safety logs in the same manner as the plaintiff did. Also, sometimes younger Assistant Managers failed to sign the safety logs at all. The younger Assistant Managers were not disciplined for this conduct.

The complaint also makes the following general allegations:

19. Almost immediately upon Crabtree's tenure beginning, the [p]laintiff began to experience disparate treatment while employed at Wal-Mart Attalla.

20. Crabtree, acting as an agent of Wal-Mart, began the deliberate implementation of a plan to reduce Wal-Mart's older managerial work force and replace them with a younger work force.

21. Upon information and belief, Crabtree did not reprimand younger Assistant Mangers at Wal-Mart Attalla for alleged violations for which the [p]laintiff received reprimand.

22. Upon information and belief, Wal-Mart was aware of Crabtree's disparate treatment of the [p]laintiff and other similarly situated employees.

23. Upon information and belief, Wal-Mart's disciplinary policy

requires that an employee receive a Decision Day ("D-Day") after a certain number of coaching or reprimands, during which the employee receives a day off to deliberate about their conduct and ponder their future with Wal-Mart. Any additional coaching following D-Day amounts to termination of employment.

24. Upon information and belief, Wal-Mart unjustifiably uses D-Days as a pre-text to force older employees out of employment.

25. Throughout the [p]laintiff's employment, the [p]laintiff received unwarranted coaching and termination while younger Assistant Managers were not reprimanded for alleged similar conduct.

26. After the arrival of Crabtree, the [p]laintiff began to hear rumors from Wal-Mart employees that the new Store Manager "wanted to get rid of the two older Assistant Managers."

. . .

38. Wal-Mart intentionally created working conditions so intolerable that the [p]laintiff was forced to resign.

39. Wal-Mart's decision to force the [p]laintiff to resign was made solely on the basis of her age.

40. Throughout the [p]laintiff's employment with Wal-Mart, Crabtree exhibited demeaning, hostile and illegal behavior toward the [p]laintiff. Crabtree's behavior caused the [p]laintiff to experience stress, humiliation, emotional distress and mental anguish.

41. Throughout her employment, the [p]laintiff did witness Wal-Mart illegally favor younger applicants and employees over more qualified, older individuals.

42. As a result of the illegal age discrimination and disparate treatment by Wal-Mart, the [p]laintiff has suffered embarrassment, emotional distress, mental anguish, humiliation and loss of wages.

43. As a result of the illegal age discrimination and disparate treatment by Wal-Mart, the [p]laintiff has suffered financial harm and damage to her prospects of obtaining a position in retail management.

. . .

52. Defendants discriminated against the [p]laintiff by systematically subjecting all employees over the age of forty to unjustifiable policies on, but not limited to, work performance, job duties, coachings, and reprimands in an effort to intentionally reduce its older workforce and replace them with younger individuals.

53. The pattern and practice of age discrimination created and maintained by the [d]efendants and their agents/employees equally was part and parcel of a policy of the [d]efendants and their agents to cause the ratio of younger to older employees at Wal-Mart to grow increasingly disproportionate, in violation of the ADEA's prohibition against age-based disparate impact discrimination.

54. The [d]efendants' employment practices and procedures thus had a disparate impact on the [p]laintiff's equal employment opportunities based on her age, in violation of the ADEA.

55. As a proximate result of the [d]efendants' actions, the [p]laintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, emotional pain and suffering, and other incidental and consequential damages and expenses.

56. As a further proximate result of the [d]efendants' actions, the [p]laintiff has been denied employment, has lost wages, benefits, promotional opportunities, and bonuses, and has incurred damages thereby.

(Doc. 1, pp. 4-11.)

**B.    The EEOC Charge and the Plaintiff's Rebuttals**[1]

On March 6, 2012, the plaintiff filed an EEOC charge which alleged:

> I am 57 years old. I was hired as an assistant manager for the above named employer in November of 2010. I was the oldest assistant manager in the store. There was only one other assistant manager over the age of 40 in the location where I worked. I performed my job as I was trained by the other assistant managers who were hired before I started working at this location. In January of 2012, a new store manager was hired at the location where I worked. I noticed a difference in the way he treated the younger store managers. For example, if I made an error in my job, I was counseled. The younger store managers did not receive counseling for their errors. I began to hear rumors from employees that the new store manager wanted to get rid of the two older assistant managers. In February of 2012, I was working a third shift rotation. A part of my job required a safety check of the power lifting

---

[1]The plaintiff attaches to her brief a typed statement she refers to as a "rebuttal statement" to Wal-Mart's response to her charge.  (Doc. 13-1, pp. 21-22.)  Apparently the plaintiff contends that this statement was sent to the EEOC and considered as part of its investigation.  Wal-Mart states that it can "neither dispute nor confirm the authenticity of the records attached as Doc. 13-1." (Doc. 15, pp. 4-5, n. 5.)  Also attached, is a handwritten statement of the plaintiff apparently made for the same purpose.  (Doc. 13-1, pp. 23-28.)  It is unclear whether the plaintiff intended the court to also consider this latter document as part of her "rebuttal."  She contends that the rebuttal "became incorporated into her Charge." (Doc. 13, p. 6.)  The defendant does not address whether that is so, but appears to assume that it is.  Because the documents do not help the plaintiff's case, the court assumes that they are incorporated, and were in fact part of the EEOC charge.  Further, the court may consider these documents, and the charge, without converting the motion to a motion for summary Judgment.  *See Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control & Prevention,* 623 F.3d 1371, 1379 (11th Cir.2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.") (quoting *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC,* 600 F.3d 1334, 1337 (11th Cir.2010)).

equipment and/or food temperature safety logs. Each night I made a check of the safety equipment and signed my name as I had been trained by the previous assistant manager for third shift. Because this was an overnight shift, it appeared that I did not sign until the following day; however that is not correct. I was called into the store manager's office and told that I did not sign the safety log until the end of my third shift rotation; however that is untrue. I am aware that younger assistant managers sign the log in the same manner that I did; and I am also aware that younger assistant managers have not signed the temperature safety log at all. I was told by my store manager that I could resign from my job or be terminated. I chose to resign under duress. I consider the above stated circumstances to constitute constructive discharge. I am aware that a younger employee was hired in my position only a few days after I was forced to resign.

(Doc. 1-1, p. 1.)

The plaintiff's rebuttal statement to the EEOC first describes the same conduct noted above, but in more detail. (Doc. 13-1, p. 21.) Next, she describes, in some detail, "numerous events where younger assistants were not punished (coached) for the same conduct that I had been coached for." (Doc. 13-1, p. 22.) She then states "[a]s shown . . . I . . . was <u>treated</u> much different than younger assistant managers." (Doc. 13-1, p. 22) (emphasis added).

In her handwritten notes, the plaintiff first attempts to point out "flaws" in the agency's investigation. (Doc. 13-1, p. 23-25.) Next, she cites a number of different incidents of alleged misconduct by other employees for which no punishment was given. (Doc. 13-1, pp. 24-25.) She asks the EEOC to "do the comparisons" between

9

their, allegedly unpunished, conduct and hers, for which she was punished in some way.  (Doc. 13-1, pp. 25-26.)  She complains that her witnesses have not been contacted by the EEOC.  (Doc. 13-1, p. 25.)  She points out that other "unbiased" persons can see that there is a "pattern of discrimination" in this case.  (Doc. 13-1, p. 26.)  She alleges that the EEOC is "afraid of Wal-Mart."  (Doc. 13-1, p. 26.)  She contends that her evidence is substantial and should "tilt the scales towards belief of my complaint instead of summarily accepting the denials of Mr. Crabtree." (Doc. 13-1, pp. 26-27).

### III.  ANALYSIS

The defendant is clear that its motion

> is not based on whether [p]laintiff waited 60 days after filing an EEOC charge as required under 29 U.S.C. § 626(d), or whether [p]laintiff's Complaint meets the necessary pleading standard articulated in *Twombly*.[2]  Instead the dispositive issues are simple: (1) whether [p]laintiff alleged a disparate impact claim in the EEOC Charge; and (2) if not, whether a disparate impact claim amplifies or clarifies the allegations in the EEOC Charge.

(Doc. 15, p. 2.)

In this case, the plaintiff has confused her claims of disparate <u>treatment</u> with a claim of disparate <u>impact</u>.  The Supreme Court has explained:

> We long have distinguished between "disparate treatment" and

---

[2]The plaintiff argues both theories in her response brief.

"disparate impact" theories of employment discrimination.

> " 'Disparate treatment' ... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion [or other protected characteristics.] Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment....
>
> "[C]laims that stress 'disparate impact' [by contrast] involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive ... is not required under a disparate-impact theory."

*Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609, 113 S. Ct. 1701, 1705-06, 123 L. Ed. 2d 338 (1993) *(quoting Teamsters v. United States,* 431 U.S. 324, 335-336, n. 15, 97 S.Ct. 1843, 1855, n. 15, 52 L.Ed.2d 396 (1977) (citation omitted) (construing Title VII of Civil Rights Act of 1964)).  In the instant case, the conduct alleged in the EEOC charge[3] falls exclusively within the ambit of a disparate treatment claim.  The plaintiff clearly claims that younger people are being <u>treated</u> better than she. In the charge, she identifies <u>no</u> employment practices that are facially neutral in their treatment of different groups, but that in fact fall more harshly on one group than another.

---

[3]Since the court is assuming that the charge also includes the rebuttals, it will refer to the documents collectively as "the charge."

11

Nor can it be said that a disparate impact claim is reasonably related to the disparate treatment allegations in the EEOC charge. The disparate impact claim does not amplify, clarify, or more clearly focus the plaintiff's allegations that she was constructively discharged or treated worse than younger workers.  It is an entirely new claim of discrimination.  No disparate impact investigation claim could reasonably be expected to grow out the plaintiff's charge because that charge alleged no facially neutral policy or practice of the defendant that falls more harshly on older people.

In her response brief the plaintiff argues that the disparate impact claim is based on the "facially neutral termination policy." (Doc. 13, p. 6.) She states:

> Because Wal-Mart's stated policy for failure to sign the logs is termination, the fact that the [p]laintiff was terminated for her failure to sign the logs and that younger Assistant Mangers who did not sign the log were not terminated, Wal-Mart's policy, while facially neutral, actually served to cause disparate impact on the [p]laintiff as alleged in her EEOC Charge. The allegations of disparate impact made by the [p]laintiff in her Complaint are amplifications and clarifications of the same allegations made by the [p]laintiff in her EEOC Charge and Rebuttal.

(Doc. 13, p. 7.)  The court rejects this argument.  While the plaintiff does allege that there is a facially neutral policy, the termination policy, she is not alleging that applying it evenly has a disparate impact on older people.  She is alleging instead that this neutral policy is being applied <u>unevenly</u>, and purposefully, <u>to discriminate</u>

against older people.

The defendant has cited three cases directly on point. In *Price v. M & H Valve Co.*, 177 F. App'x 1, 14 (11th Cir. 2006), the Eleventh Circuit wrote:

> In the instant case, Price's EEOC charge included that M & H Valve (1) denied him the opportunity to apply for a supervisory position because of his race by failing to advertise vacant supervisory positions and by promoting Caucasian employees, instead of more qualified African-American employees; and (2) subjected him and other African-American employees to harassment through racial slurs, jokes, and differences in treatment. Price's claim that M & H Valve's supervisory-training program had a disparate impact on its African-American employees did not "amplify" or "clarify" the previous allegations, nor did it "grow out of the previous claims." Moreover, the record does not reflect that Price attempted to amend or update his EEOC charge. *See Gregory,* 355 F.3d at 1280. Thus, we conclude that Price also failed to exhaust his administrative remedies as to his claim of disparate impact.

*Price*, 177 Fed. App'x at 14.[4]

The plaintiff argues that *Price* is inapplicable "because [it] was decided at the summary judgment stage of litigation," "after the completion of discovery," and that "at this stage [in the instant case] the [p]laintiff does not have to prove the merits of her case." (Doc. 13, p. 6.)  This is a distinction without a difference.  There is no indication in *Price* that the stage of the litigation had any influence on the decision, or that the decision could not have been made at an earlier stage, based on just the

---

[4]"Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

EEOC charge and the allegations in the complaint. Further, the plaintiff has not explained how discovery would help her show that her EEOC charge contained a disparate impact claim.

In *Cross v. Suffolk City Sch. Bd.*, 2:11CV88, 2011 WL 2838180 (E.D. Va. July 14, 2011), another case cited by the defendant, the EEOC charge stated:

> On multiple occasions from 2006 and as recently as July 31, 2007, I have applied for the position of Assistant Principal. Most recently on August 31, 2007, I became aware that I was denied an interview thus not selected for the position. On each occasion the position was given to younger individuals who had less experience or were lesser qualified than me. I have been employed with this organization since August 2001 and my current position is Teacher Coordinator and Department Chairperson of Career and Technical Education.
>
> I believe I am being discriminated against because of my age, 58, in violation of the [ADEA] and the [VHRA].

*Cross*, 2011 WL 2838180 at *7-8. The court held that "[a]though that allegation relates to a disparate treatment claim . . . it is insufficient to support a disparate impact claim," because, to state such a claim, "a plaintiff's EEOC charge must, at a minimum, identify a facially neutral policy that has a disparate impact on a protected group of which the plaintiff is a member and/or facts supporting a reasonable inference of one." *Id.* at 8. The plaintiff attempts to distinguish *Cross* by arguing that she has identified a facially neutral employment practice "of disciplinary measures that lead to her termination." (Doc. 13, p. 7.) For the reasons previously set forth, the court

14

rejects this argument.

The last case cited by the defendant is *Leo v. Garmin Intl*, 09-CV-2139-KHV, 2009 WL 3122502 (D. Kan. Sept. 24, 2009). In that case the EEOC charge stated:

> I applied for the position of Embedded Software Engineer in February, 2008. On April 15, 2008, I was contacted by Brad Mason regarding my previous application. I had originally applied for a position in about July, 2007. I confirmed that I had previously applied. I am qualified for the position based on my education and prior job experience. However, I was not selected for the position. I believe that the company hires about 10 younger persons per month in this position. I believe that I have been discriminated against because of my age (46) in violation of the ADEA.

*Leo*, 2009 WL 3122502 at *3. The court held that "[a] fair reading of plaintiff's EEOC charge does not reveal any claim of disparate impact." *Id.* at *5. It further noted that

> plaintiff's charge did not mention a specific policy or an adverse effect on a protected class. Based on the narrow allegation in the EEOC charge, the EEOC would not reasonably have been expected to investigate a disparate impact claim. The Court therefore finds that plaintiff did not exhaust administrative remedies on his disparate impact claim under the ADEA.

*Id.* at *5. The plaintiff attempts to distinguish the *Leo* case, again, only by arguing that she did allege a facially neutral employment practice. Again, as previously explained, the court rejects her argument.

## IV.     CONCLUSION

The court finds the *Price*, *Cross*, and *Leo* cases persuasive and determines both that the plaintiff did not allege disparate impact in her EEOC charge, and also that the scope of the investigation by the EEOC could not, based on the allegations in the charge, reasonably have included an investigation into any disparate impact claim. Accordingly, it is hereby **ORDERED, ADJUDGED**, and **DECREED** as follows:

1. The plaintiff's disparate impact claims are due to be, and hereby are **DISMISSED, with prejudice**;

2. Further, the defendant has requested that "the pleadings be amended to reflect the only proper Defendant, Wal-Mart Stores East, LP as neither Wal-Mart Associates, Inc. nor Wal-Mart Stores []East Inc. Employed [p]laintiff." (Doc. 10, p. 1, n. 1.)  Within 7 days, the plaintiff shall **SHOW CAUSE** why this request should not be granted.

**DONE** and **ORDERED** this 28th day of June, 2013.

                                                                              _____
                                                                              **VIRGINIA EMERSON HOPKINS**
                                                                              United States District Judge